## WELSCHER'S ESTATE.

The fact of a trustee having been discharged by the Court does not necessarily deprive him of commissions.

When the amount of an auditor's fee has been fixed by the Court the Supreme Court will not alter it unless it is grossly excessive.

Appeal from Common Pleas No. 4 of Philadelphia County. No 216 January Term, 1880.

John B. Welscher executed a deed of his estate to Joseph H. Gasslein and Theodore H. Lutkenhans, in trust for his daughter, Caroline Welscher.   The assets consisted of $4,500, United States bonds, $500 in cash, and a note of Lutkenhaus' for $1,800.   Gasslein took possession of all the assets, and subsequently Lutkenhaus filed a petition and caused the assets to be deposited in the Fidelity Trust Company for safe keeping, in the names of the joint trustees.   Gasslein then renounced the trust.   John B. Welscher died soon after making the trust deed, and Charles Graeff was appointed his administrator.

After Gasslein renounced the trust Lutkenhaus was advised by his counsel to petition the Court to have Graeff appointed as co-trustee. The sureties of Graeff afterwards petitioned the Court to discharge him on the ground of insolvency and mismanagement. After a report from a master the Court discharged both Graeff and Lutkenhaus, and ordered them to file an account; and the Fidelity Trust Co. was appointed trustee in their place. Graeff and Lutkenhaus each filed an account. An auditor was appointed, who made a report. The Court disallowed certain items which were allowed by the master, and entered a decree. A further statement of the facts will be found in the opinion of the Supreme Court. Lutkenhaus then appealed from this decree. The seventh assignment of error was as to the refusal to allow commissions.

*Edward Willard*, *Esq.*, for plaintiff in error, cited: Neff's Appeal, 57 Pa., 91 ; Stell's Appeal, 10 Pa., 149.

*T. Greenbank and Hon. F. C. Brewster*, contra.

The Supreme Court reversed the decree of the Common Pleas on March 14, 1881, in the following opinion, per

GREEN, J.:

In this case the counsel for the appellee has not furnished us with any paper book. The counsel for the appellant has published a history of the case, but no argument. The very brief report of the master, while it expresses in figures his final action, contains a very slight explanation of one of his rulings, and none at all of the rest. He refers to a report made by himself in another matter, as containing the reasons for his decision upon one subject, but that report is no part of the record of this case, and as it is not printed, we have no knowledge of its contents, and of course can base no action upon it. There is no opinion of the Court below upon any question, though the final decree makes important changes in the master's report. The presentation of a case in this Court in the loose, disjointed, and imperfect manner in which this one comes before us is much to be regretted. In the excessively crowded condition of our list it is of the utmost importance that we should be afforded every facility for the full and speedy consideration of every cause presented for our decision.

We must deal with this case as we find it in the printed record. Beyond that we cannot go.

The first assignment of error complains of the allowance of a fee of $600 for the services of the master. We can only judge of these services by the report itself and the testimony returned with it. The report covers two and a half pages of printed matter. The account which was examined and adjudicated is a very simple trust account, containing fourteen items of debit, amounting to $8,105.37, which was the entire trust fund, and twenty items of credit, amounting to $1,994.36. All the credits claimed were allowed except two: one, the the commissions, $567.37, and the other a sum of $323.25, which was paid by the accountant to his co-trustee under advice of counsel. There appear to have been some other items of the account objected to, but what they were the report does not state. As they appear in the decree of the Court there were but four of them in all: one, an item of $400 counsel fee, and three others for some alleged expenses in the proceedings, amounting in the aggregate to $58.12. All these items were allowed by the master, but disallowed by the Court. Nothing whatever is said about them in the report, but on recurring to the testimony we find that, although exceptions to them were filed, they were all withdrawn before the master, and hence required no consideration at his hands. Upon looking at the testimony to ascertain further what were the services of the master, we find that the whole of it is contained in ten printed pages, and that only three witnesses were examined. The first meeting occurred on September 24, 1873, and the last on December 31, 1873. There were fourteen meetings in all, but most of them were merely for adjournments. At only five of them was any testimony taken. So far as its extent is concerned it could all have been easily taken at a single session. No difficult or complicated question is stated or discussed in the report. The foregoing is the whole of what is to be gleaned from the record as to the services of the master. It is true he was appointed on June 21, 1873, and his report was not filed until February 23, 1878, but there is not a word of explanation as to this long delay, and there do not appear to have been any meetings of the

master after December 31, 1873. In such a condition of the record it is impossible for us to conceive of any adequate reason for a charge of $600 for such services as these. To us it seems to be grossly excessive and unreasonable. We have concluded to allow the sum of $200 as compensation for these services, and, in view of all the circumstances, we regard that amount as quite liberal. The first assignment of error is sustained, the compensation of the master is reduced from $600 to $200, and this amount is directed to be paid out of the trust fund

The second assignment relates to the disallowance by the Court of the item of $400 for counsel fees in the administration of the trust estate. On the hearing before the master exception was taken to this item. The report does not state who made the objection, but in the master's notes of the proceedings before him, it is stated that Mr. Remak withdrew his objection to the item. This occurred at the meeting held November 19, 1873. At the next preceding meeting, on November 12, 1873, the master states that Mr. Faunce withdrew his objection to the item of $400. Now Mr. Remak represented, as counsel, the sureties of the administrator of the decedent, John B. Welscher, and Mr. Faunce represented the appellee, Catharine Welscher, or rather her guardian, Andrew Erdrich. These parties appear to have been the only persons interested in the question and in the controversy, and they withdrew all objection to the allowance of the credit. Affirmative testimony was given that the money had been actually paid, and the receipt of counsel for the sum paid was produced. The master took no further action in regard to the item. He simply allowed it. The Court disallowed it without any opinion, but stating as a reason that it appeared "that the fees were not allowed for services rendered to the trust estate." There is some confusion and lack of certainty as to what the services were for which the sum of $400 was allowed. The accountant testified that the money was claimed by, and paid to, Mr. Kneass, Mr. Ransford and Mr. S. A. Cornman, who said it was for services rendered to the estate. Mr. Kneass and Mr. Ransford represented Charles Graeff, as administrator of John B. Welscher, deceased. Mr. O. P. Cornman testified

that his son, S. A. Cornman, now dead, "was engaged in advising and directing the affairs of this estate two or three years." * * "He attended to everything in the estate, filing answers, etc., doing everything that was necessary to protect the estate." He further said he considered $200, the amount received by S. A. Cornman, as greatly inadequate. Mr. Ransom testified that he and Mr. Kneass originally represented Mr. Greaff as administrator, and as there were creditors of John B. Welscher, they had it in contemplation to attack the deed of trust as a fraud upon creditors. That subsequently negotiations were had between Graeff and Lutkenhaus, and their respective counsel, which resulted in a petition to the Court for the appointment of Graeff as co-trustee. The appointment was made, and Graeff gave a bond with sureties in $10,000, which was approved. Afterwards Messrs. Kneass and Ransford continued to represent Graeff as co-trustee, and S. A. Cornman represented Lutkenhaus. Another petition was presented, to which an answer was filed, a master was appointed, and all the counsel attended at a number of meetings. Afterwards the counsel of both trustees concluded to draw out of the Fidelity Company the assets and bonds of the trust there deposited in the name of Mr. Lutkenhaus alone, as trustee, and to re-deposit them in the joint names of both trustees. This was done, and at that time, as Mr. Ransford testifies, "the subject of compensation of counsel was mentioned, and it was suggested that each trustee pay his counsel $200, making $400 in all. This was objected to by Mr. Lutkenhaus as being too much, and then counsel explained to him all the time and trouble involved in the matter, and further stated that any further services necessary for the estate would be given without additional charge. Mr. Graeff appeared so be perfectly satisfied all the time; and Mr. Lutkenhaus appeared to become so when this latter statement was made. Mr. Lutkenhaus' counsel then received $200, and Mr. Kneass and myself received $100 apiece." It also appeared in the testimony that the whole of the trust fund, $6,800, was originally in the hands of Joseph H. Gasslein, one of the trustees appointed by the deed of trust, and that Lutkenhaus, being anxious that the fund should be deposited with the

Fidelity Company, urged Gasslein to make such deposit, but he refused to do so. Thereupon Lutkenhaus employed S. A. Cornman to get the money, and he made an application to Court, in consequence of which the fund was obtained and deposited with the Fidelity Company. The foregoing tedious and somewhat prolix investigation of the testimony has been rendered necessary by the entire omission of the counsel on both sides, the master and the Court below, to make any statement of facts, or to submit any discussion whatever of the matters affecting the determination of this question. The charge of $400 for services of counsel appears to be somewhat liberal for general advice and service to an estate of $8,100, where there does not appear to have been any contested litigation as to the *corpus* of the estate; but as no objection was made before the master, and as the record shows there was service rendered by the gentlemen who received the money, which in reality was for the benefit of the estate, we think the Court below was in error in surcharging the accountant for the money actually paid by him to the several counsel concerned. We see no reason why any part of this sum should be paid by the accountant individully, and the second assignment of error to the action of the Court below in disallowing the credit is sustained.

The third assignment is also sustained, as it appears by the testimony that the sum of thirty dollars, disallowed by the Court, but allowed by the master, was paid by the accountant to S. A. Cornman, at the time of the application to the Court by him to compel the trustee, Gasslein, to deposit the trust fund with the Fidelity Company.

The fourth assignment is not sustained, as the applicant himself testified that the item $19.50 was paid for the application to the Safe Deposit Company to pay off his own note of $1,800. Of course he could not make a charge, nor could his counsel, for merely visiting the office of the Company to make such a payment.

The fifth assignment is not sustained, because there is no testimony showing for what the item of $8.62 was paid. It

is too indefinite to say it was paid for the answer to Erdrich's petition.

The sixth assignment is not material, and moreover it is too indefinite to be considered. Not a word of argument is offered in its support, and we are not referred to any instance in which the appellant is charged with any sum for which the other trustee is alone responsible.

The seventh assignment is sustained. The master, in his report, states that in a report filed by him April 18, 1873, it will be found that Graeff and Lutkenhaus were guilty of such acts of gross mismanagement of the trust that they were dismissed. What those acts were he nowhere states. He does not even tell us in what proceeding such a report was filed, nor to what it related. It appears, however, from the docket entries, that a petition was presented by the sureties of Graeff, praying for his discharge, principally on the ground of his insolvency. The testimony taken under that petition, by this same master, is printed, but as it relates entirely to the allegations against Graeff, and Lutkenhaus was not a party to it, it is difficult to understand how there could be any findings in the report founded upon that testimony by which he would be bound. In any event, we are entirely ignorant of any cause established by that proceeding for depriving the appellant of his commissions upon his account. A dismissal from his position as trustee would not necessarily accomplish that result, and that question could not possibly have arisen in the proceeding referred to, as his account was not then adjudicated. The only reason given by the master for imposing this penalty upon Lutkenhaus is that he paid $323.25 of the trust fund to his co-trustee. But it is proved that this was done by the advice of counsel, and he also took a note from Graeff for the repayment of the money. Graeff had given ample security for the performance of his duties as trustee, and it is therefore doubtful whether the appellant should be held to any responsibility for this payment to his co-trustee. But, however that may be, the master and Court below have charged the appellant with this sum, and therefore the fund is fully reimbursed. To go beyond this, and make use of this circumstance as a reason for depriving him of his commissions, is simply an act

of arbitrary oppression, and we cannot sanction it. No other reason appearing for this surcharge, the seventh assignment of error is sustained and the appellant is allowed his commissions. The eighth and ninth assignments have been already disposed of. There is no reason for imposing any of the expenses of the audit upon the appellant. We may add that we see no reason for charging the appellant with $176.75 as the difference between between $323.25 and $500, as he was already charged with the whole sum of $500, and had only taken credit for the $323.22, which was returned to the estate by striking out that credit. As it stands now the appellee appears to be charged with $676.25 for only $500 actually received by him. But as no assignment of error brings this question before us, we can make no order regarding it.

Now, to wit, March 14, 1881, it is ordered that the decree of the Court below be modified and corrected as follows, to-wit: The allowance of $600 for the fees of the master is reversed, and the amount to be allowed is fixed at $200, the whole of which is to be paid out of the trust fund; the order of the Court below, disallowing the credit of $400 for counsel fees is reversed, and the credit in the account for that sum is restored. The accountant is further to receive credit for the sum of $567.37 commissions, and the surcharge of that sum by the Court below is reversed. He is also to be credited with the item of thirty dollars paid S. A. Cornman, and is not to be charged with the item of fifteen dollars and seventy-five cents Prothonotary's fees; the credits for the items of nineteen dollars and fifty cents, and eight dollars and sixty-two cents, are to be rejected from the account; the costs of this appeal to be paid by the appellee.

---

The auditor then applied for a re-argument on the ground that he had not been notified of any objection to his fee. He alleged that the printed record was not a true copy of his report, and that no exception had been made to his fee in the Court below nor in the assignments of error first filed.

*Hon. F. C. Brewster*, in behalf of the auditor argued that the amount of the fee had been fixed by the Court in its discretion, under the Act of April 14, 1870, P. Laws, 1158; and

when the Court has exercised its discretion the Supreme Court will not review it; Porter's Appeals, 30 Pa., 496; Totten's Appeal, 40 Pa., 385. What is matter of discretion with the Court below is not reviewable; Renninger vs. Thompson, 6 S. & R., 1; Weidknecht vs. Boyer, 2 W. N. C., 638; Gallagher vs. Miller, 4 W. N. C., 165; Rogers vs. Whiteley, 33 Pa., 137; McKee vs. Sanford, 25 Pa., 105.

The Supreme Court modified its decree on the re-argument in the following opinion, which was delivered on February 20th, 1882, per

GREEN, J.:

A re-argument of this case was ordered on the application of the auditor, whose fee was excepted to by the appellant, and was reduced by our former ruling from $300 to $200, for the reasons stated in the opinion heretofore filed. Among the assignments of error first filed, there was none which called in question the action of the Court below in allowing the auditor's fee. Additional assignments were filed subsequently, the first of which did allege error in the allowance of this fee. Of this, however, the auditor alleged that he had no notice, and therefore he was not heard before us at the former argument. In consequence of this state of facts the re-argument was ordered. It appears by the record, as now brought before us, that the services rendered by the auditor were not disclosed in the paper book of the appellant submitted on the former argument. It further appears that after exception to the auditor's fee in the Court below, the amount, $600, was allowed by that Court, and that in point of fact this allowance was assented to by Mr. O. P. Cornman, one of the counsel for the appellant, and by both the counsel for the other trustee, and no exception to the fee was at any time made by or on behalf of the appellee. It further appears that the successor in the trust paid the whole amount of the fee soon after it was fixed by the Court below, doubtless upon the faith of that decree, and with the knowledge of the assent of the counsel for the trustees. In view of all these circumstances, and of the discretionary power given to the Courts of Philadelphia by the Act of 14th April, 1870, § 1, P. L. 1158, in fixing the compensation of auditors, we have concluded to modify our

former decision of this question, so far as it relates to the amount of the fee charged. The Court below would neces-sarily have a much better opportunity than is possible to us of judging of the amount of compensation proper to be allowed to auditors upon accounts pending before them, and hence, very great respect should be paid to their determinations of such matters. For these reasons we have decided to affirm the allowance by the learned Court below of the sum of $600 as the compensation of the auditor, and the first assignment is therefore not sustained. The present re-argument was not intended to open the discussion of the questions raised by the other assignments, but after a careful reading of all that has been submitted in relation to them we see no reason to change the views heretofore expressed on these subjects. We do not consider the conclusions of the master, as to the conduct of the present appellant, as warranted by the testimony. No part of the trust estate was abstracted or appropriated by him, and the whole amount of principal and interest is accounted for. The record does not disclose that any exception was taken to the amount of the commissions, either before the auditor, or in the Court below, nor is there any assignment of error which raises that question here. The non-payment of interest to the guardian is the only real omission of duty sustained by the testimony ; but as there appears to have been a dispute about the *corpus* of the estate on the part of the widow, who claimed that she had been defrauded of her rights by the deed of trust, followed by notice to the Fidelity Company not to pay out any part of the funds of the estate, it is not clear that this omission was intentional on the part of this appellant. As soon as counsel agreed that there should be such a payment, and objection thereto was withdrawn, the payment was made.

Now, to wit, February 20th, 1882, it is ordered that the decree of the Court below be modified and corrected as follows, to wit: The allowance of $600 for the fees of the auditor is sustained, and the amount is to be paid out of the trust fund. The order of the Court below disallowing the credit of $400 for counsel fees is reversed, and the credit in the account for that sum is restored. The accountant is further to receive credit for the sum of $567.37, commissions, and the surcharge

of that sum by the Court below is reversed. He is also to be credited with the item of thirty dollars paid S. A. Cornman, and is not to be charged with the item of fifteen dollars and seventy-five cents, Prothonotary's fees. The credits for the items of $19.50 and $8.62 are to be rejected from the account, the costs of this appeal to be paid by the appellee.