## Millman's Estate

Before Gest, Henderson, Van Dusen, Stearne, and Sinkler, JJ.

The facts appear from the adjudication of

GEST, J., Auditing Judge.—Jesse Millman died on October 24, 1899, leaving a will, which was admitted to probate on November 2, 1899, by which he bequeathed to his daughter, Reba T. Millman, all of his personal property absolutely, his real estate to remain in trust for said daughter during her lifetime, and at her death to go to her children; if she should have no children, then she to dispose of the property by will as she may think proper, and in default of appointment he directed that none of his father's brothers or sisters was to receive any part of his estate, and he further directed that if his said daughter should marry and have children and think her husband worthy, she might will him the use of said property as long as he remains single, then to be divided in equal shares among her children at his death or remarriage.

By decree of this court, Republic Trust Company was appointed trustee for Reba T. Millman, who, by marriage with Samuel Thompson Graham, became

Reba M. Graham, and the name of Republic Trust Company was changed to United Security Trust Company on November 19, 1929. On October 5, 1931, William D. Gordon, secretary of banking, by authority of the Act of Assembly of June 15, 1923, P. L. 809, as amended, took possession of the business and property of the United Security Trust Company, and appointed Byron A. Milner special deputy as agent in the liquidation of said trust company, and on November 18, 1931, he determined to liquidate the affairs of said trust company, in consequence of which this account has been filed. It is stated that on November 30, 1931, Fidelity-Philadelphia Trust Company was appointed substituted trustee for Reba M. Graham. It is also stated that Samuel Thompson Graham died on June 11, 1913, leaving the said Reba M. Graham surviving without issue.

The accountant is charged, under date of March 23, 1917, with the proceeds of sale of real estate sold under a decree of this court dated January 26, 1917, and takes credit for commissions at three per cent. on $11,267.44, the gross debits, amounting to $338.02. The question was raised whether this is a proper credit, the trust not having terminated and the account having been filed by reason of the forced liquidation of the trustee.

Mr. Rothermel, representing Mrs. Reba M. Graham, cited Mylin's Estate, 32 Pa. Superior Ct. 504, and Grollman's Estate (No. 2), 273 Pa. 565. The latter case, however, does not seem to be in point.

The general rule is undoubtedly as stated, that a trustee is not entitled to charge commissions on the corpus of the estate until the trust has terminated. But there are some well-recognized exceptions to this rule. Thus, when a trustee dies and his account is filed by his personal representatives, commissions will be allowed in a sum commensurate with the services performed, the responsibility incurred and the length of time during which the responsibility continued, as in Wainwright's Estate, 27 Dist. R. 955, where the trustee died, and in Makin's Estate, 7 Dist. R. 126, where the trustee retired by agreement with the cestui que trust. See, also, Rominger's Estate, 28 Dist. R. 513. The latest case is Murray's Estate, 103 Pa. Superior Ct. 87, where the trustee died, and Wainwright's Estate is expressly approved and Makin's Estate referred to with apparent approval. Murray's Estate also referred to Mylin's Estate, relied on by counsel in the present case, and noted that there in the very beginning of the trust the trustee, who became insolvent, appropriated commissions, which it had no right to do. It is true that in Mylin's Estate the Superior Court said:

"Assuming, for present purposes, that the insolvency of the trustee was not induced by the careless or criminal conduct of its business, and that it was its misfortune rather than its fault which required the appointment of a new trustee, it by no means follows that the trust estate should be visited with the results of such misfortune. It requires no prophet's ken to foresee that a series of such misfortunes would hopelessly reduce the corpus of the estate, so that its income would utterly fail of the purpose originally intended."

And the court further continued:

"As the court below well said, in the opinion dismissing the exceptions to its adjudication, 'It is not the case of a terminated trust or the ordinary change of trustees, but of a forfeited trusteeship.'"

I have also looked at Welscher's Estate, 3 Walker 241, where, according to the syllabus, the Supreme Court held that the fact of a trustee having been discharged by the court (as it would seem on account of insolvency and mismanagement) does not necessarily deprive him of commissions. The report of this case, however, is so confusing that I am by no means sure that it applies in the present case.

I do not think, however apposite the quotation from Mylin's Estate may appear, that it was intended to lay down a hard and fast rule applicable to all cases like the present. The trustee has faithfully administered the trust for nearly fifteen years, sold real estate under the direction of the court, has not committed any default in reference to the assets of this estate, and it does not seem to me to be just to disallow these commissions, which I will consequently allow.

*Daniel R. Rothermel*, for exceptants; *Arthur Hagen Miller*, contra.

STEARNE, J., December 2, 1932.—A majority of the court are of opinion that Mylin's Estate, 32 Pa. Superior Ct. 504, does not establish a rigid rule, where a corporate fiduciary is obliged to liquidate, that, irrespective of all considerations, it is thereby to be deprived of all compensation for the efficient and faithful conduct of the trust while under its management.

We thoroughly agree in principle with the adjudication. The trustee whose account is filed by the secretary of banking was appointed in 1916—over fifteen years ago—and has faithfully performed the duties of the trust; no loss has been incurred and no fault has been found with its management. After fifteen years the trustee, like a score of other trust companies, was obliged to relinquish its trusts, and the trust estate, intact and without depreciation, was taken in charge by the secretary of banking. A new corporate trustee was appointed, which, at the audit of the account, objected to the allowance of a single penny as commissions or compensation to the former trustee. Now the general rule in this state is undoubtedly that a faithful and honest fiduciary is entitled to reasonable compensation whether he dies before the termination of the trust or voluntarily retires: Wainwright's Estate, 27 Dist. R. 955; Rominger's Estate, 28 Dist. R. 513. And this exception was likewise applied by this court in Makin's Estate, 7 Dist. R. 126, where the retiring trustee was cited to file an account on a petition alleging mismanagement of the estate, and it was conceded that he had made an improper use and investment of a portion of the trust fund which he reimbursed to the estate. Nothing of this kind appears in the present case.

It is no answer to say that the life tenant was justified in assuming that the trust company would serve until the end of the trust. That is the natural assumption of a cestui que trust, whether an individual or a trust company is selected, and if a trust company goes out of business it is equivalent to the death of a natural person.

If it be urged that the three per cent. charged in this case is as much as the trustee would receive had the trust terminated by the death of the life tenant, the answer is that the allowance is really made as compensation rather than a percentage commission; but if the compensation in this case is reduced from $338.02 to $250, which would be at the rate during fifteen years of service of $16 per annum, no reasonable objection could be made.

With the acquiescence of the auditing judge, this reduction will be made, and with this modification of the adjudication the exceptions to the adjudication are dismissed and the adjudication confirmed absolutely.

HENDERSON J., dissenting.—This decedent died in 1899, leaving his daughter all his real estate "in trust" for her life, with a gift over at her death. No trustee was named in the will, and so at first she managed the real estate herself. About 1916, a parcel of this real estate was condemned, and a trustee became necessary to make title.

This exceptant chose the Republic Trust Company, afterwards merged with the United Security Trust Company, which company by its bankruptcy has forfeited the trusteeship and has filed this account to be relieved thereof. It has taken credit therein for $338.02, being three per cent. on the gross debits of principal, all derived from the sale of real estate. This is the usual rate of commission for converting real estate and it would have been entitled to no more were the trust terminated. The majority opinion points out that the bankrupt trustee would only be entitled to compensation, not commissions, and fixes $250 as a fair amount.

In selecting a corporate trustee, this life tenant was justified in assuming that it would serve to the termination of the trust, and meanwhile she would have the benefit of its expert supervision and the security of its capital stock. Through its mismanagement she is deprived of both of these, and although this trustee has had commissions of about $400 on income, it has requested full commissions on the corpus; while this has been denied, compensation in the sum of $250 has been allowed. The auditing judge recognizes the rule in this state as laid down in Mylin's Estate, 32 Pa. Superior Ct. 504, and quotes at length in his adjudication what our Superior Court said therein.

Nevertheless, because this trustee had served fifteen years, he was of opinion that it did "not seem" to him "just to disallow these commissions," and, hence, this should constitute an exception to the rule.

Can we say it is "just," that is equitable and fair, to allow compensation and compel the fund to pay a second set of commissions to a substituted trustee?

If this "exception" to the rule, in favor of forfeited trusteeships by bankrupt banks, is permitted to stand, I venture to predict it will presently become the rule. It is highly inequitable, when these parties in interest are deprived of the management of this company and the security of its stock, to compel them to pay a second set of commissions, and this through no fault of their own, but due solely to the mismanagement of the corporate trustee.

The cases relied on in the majority opinion are Makin's Estate, 7 Dist. R. 126, Wainwright's Estate, 27 Dist. R. 955, and Rominger's Estate, 28 Dist. R. 513.

Makin's Estate is an extraordinary extension of judicial tenderness towards a trustee who had invested the trust estate's funds in third and fourth mortgages, who was surcharged, paid the surcharge and resigned. It is not a case to be relied upon in laying down a rule granting compensation in forfeited trusteeships of bankrupt trust companies.

In Wainwright's Estate the deceased trustee had served for twenty years and had waived all commissions on income.

And in Rominger's Estate the question of an allowance of compensation out of corpus was not involved. Upon the resignation of the trustee the costs of the accounting were directed to be charged to the principal account.

It should, furthermore, be pointed out that such commissions go to swell the fund for the depositors, and had the estate been awarded a surcharge, not one penny of it could have been collected.

I am of opinion that it would be unjust to allow any compensation out of corpus. It will not do to plead that this corporate trustee has administered this fund for fifteen years and should have some compensation. That can scarcely be urged as a reason why the beneficiaries should be compelled to pay twice; and it may be, at least potentially, thrice.