## Mellon National Bank & Trust Co. v. East Crossroads Center, Inc.

*Charles C. Arensberg,* of *Patterson, Crawford, Arensberg & Dunn,* for exceptant.

*W. F. McCrady, Jr.,* of *McCrady & Kreimer,* contra.

ELLENBOGEN, J., February 23, 1961. This case is before the court on exceptions filed by East Mills Center, Inc., the assignee of plaintiff, to the report of the auditor appointed by the court.

Plaintiff's assignee filed eight exceptions to the findings of fact and conclusions of law of the auditor. It is not necessary to state them separately, because they are all directed to the validity of the mechanic's lien filed by Elio D'Appolonia. . . .

We shall first review briefly the facts which gave rise to the litigation at bar.

In October 1955, East Crossroads Center, Inc., a Pennsylvania corporation, began construction of a

large shopping center consisting of a large number of buildings, parking areas, walks, and other facilities essential to the operation of a modern shopping center. The shopping center was to be built on a 54 acre plot of ground consisting of hills and valleys. Considerable cutting, filling, grading, and leveling had to be done in order to prepare the tract for the construction. It was essential to obtain a level ground surface upon which to erect the store buildings and the adjacent parking areas.

The construction of the buildings presented difficult problems, created by the cutting, grading, leveling, filling, and compacting operations. These operations had to be performed in a certain manner to prevent the buildings from sliding and collapsing at a later date. To assure the correct execution of these operations, the owners retained Elio D'Appolonia, a registered professional engineer, a specialist in such work. D'Appolonia was engaged orally on an hourly basis.

The auditor's report sets forth in detail the exact nature of the work which was performed by D'Appolonia and his men and recites the various problems which he encountered and mastered during the course of his activities on the East Crossroads job. Of crucial importance in the work done by D'Appolonia was the design and the supervision of construction of special beams and caissons to form the foundation for the store buildings on the filled ground. The testimony shows, and the master properly found, that the store buildings could not be constructed safely without the work of Elio D'Appolonia.

D'Appolonia was paid for his work up to May 1, 1958, and has not been paid for work done since that date.

Prior to the completion of the construction of the center and its opening for business, the owners en-

countered financial difficulties which resulted in the foreclosure of the mortgage in the amount of $5,200,000 on the property by the Mellon National Bank and Trust Co. The property was sold at sheriff's sale on October 9, 1959, for $100,000 to East Hills Center, Inc. Pursuant to the Act of April 10, 1862, P. L. 364, 12 PS §2670, the sheriff returned the writ upon which the sale was held endorsed with his schedule of distribution. After the payment of taxes and costs, the balance of $78,285.01 was awarded by the sheriff to the mortgagee, Mellon National Bank and Trust Co.

Following the filing of the return, exceptions to it were filed by eight different claimants of whom Elio D'Appolonia was one, his claim being in the amount of $22,818.93. On October 30, 1959, upon petition of counsel for D'Appolonia, the court appointed William H. Eckert, Esq. as auditor "to pass upon the exceptions filed to the Sheriff's Special Return at the above number and term and to make report to the Court of his findings together with a schedule of distribution."

After the auditor had been appointed, all but two of the claims were settled, the remaining claims being those of D'Appolonia and Pittsburgh Accoustical Contractors. After the assignment of the case to the auditor, Mellon National Bank assigned all its rights in any of the proceeds to East Hills Center, Inc.

The auditor, after conducting extensive hearings at which testimony was taken, filed a voluminous report in which he sustained the exceptions of Homer Livingston, doing business as Pittsburgh Accoustical Contractors, and of Elio D'Appolonia.

There is no dispute as to the merit of the claim of Pittsburgh Accoustical Contractors. That claim is now admitted by plaintiff's assignee.

Following the filing of the report, the court awarded a fee of $7,500 to the auditor for his services. Plain-

tiff's assignee has now filed exceptions to sustaining the claim of D'Appolonia and to the failure of the court to apportion the master's fee among the claimants.

Plaintiff's assignee bases its exceptions to the mechanic's lien on several grounds. It contends that the auditor erred in his findings and in his determination that the mechanic's lien was valid. Plaintiff's assignee takes the position that the work done by D'Appolonia and his organization is not such as to entitle him to a mechanic's lien under the laws of Pennsylvania. According to East Hills, D'Appolonia's work concerned itself with grading and filling, and planning and designing the various roadways, access roads, parking areas, ditches, sewers and drains. It claims that in order for the lien to be valid, the work performed must have been on a "structure": Act of June 4, 1901, P. L. 431, 49 PS §1 et seq. Plaintiffs deny that the shopping center as a whole can be considered a "structure" within the meaning of the act.

We have carefully reviewed the auditor's report. It is an able, if not a brilliant, exposition and discussion of the facts and the law applicable to the case. The auditor correctly decides that a shopping center, including its parking area and access roads, is one single improvement, an integrated whole.

The modern shopping center is the answer to the revolution in shopping brought about by the automobile. The patron arrives by automobile; this necessitates access roads. He must park his automobile before his shopping begins; this requires parking areas. Indeed, we may take judicial notice that automobile parking facilities distinguish shopping centers from other retail stores. *Adequate parking* is the most important factor in the success of a shopping center. It is an integral part, an extension of each store, as important as the shopping area itself.

We agree with the learned auditor that the entire parking area in the East Hills Shopping Center and the access roads thereto come within the meaning of the word "improvement" and the word "curtilage" as used in sections 1 and 2 of the Mechanic's Lien Act of June 4, 1901, P. L. 431, 49 PS §1, and within the words "so much other ground . . . as may be necessary for the ordinary and usual purposes of such building," as used in section 2 of the Mechanic's Lien Act of June 16, 1836, P. L. 695. There is nothing we can add to the master's lucid and convincing discussion of this question.

The law pertaining to the filing of mechanic's liens by architects is applicable to the case at bar. It has been held that an architect can file a mechanic's lien for the reasonable value of his services if his services included supervision, superintendence, or inspection: The Bank of Pennsylvania v. Gries, 35 Pa. 423, Hoekstra v. Chambers-Wylie Memorial Presbyterian Church, 51 Pa. Superior Ct. 405; Silfies v. Austin, 104 Pa. Superior Ct. 344. The law distinguishes between an architect who merely draws plans and one who directs and supervises the execution of the plans which he has drawn.

In the case at bar, D'Appolonia, in addition to preparing drawings and plans, actually supervised the work. D'Appolonia or one of his associates was on the job site daily.

Much of D'Appolonia's work concerned the design and construction of sewers and drains to service the shopping center, buildings, and grounds. Our courts have permitted the filing of mechanic's liens for work of this kind: Owen & Salter v. Johnson, 174 Pa. 99; Garber & Sons, Inc. v. Draper, 89 D. & C. 235.

It requires no extension of established doctrine to apply the principles of these cases to the case at bar and allow the mechanic's lien to stand.

We turn our attention to the matter of the fee due the auditor. A fee of $7,500 was awarded by the court. Counsel for all parties have agreed that that is a fair and reasonable fee for the work done.

The question before us is whether the Act of June 4, 1879, P. L. 84, 17 PS §1746, which limits certain fees to $10 a day, is applicable to the auditor in the case at bar. Counsel for East Hills argues that while the fee sought by the auditor is reasonable, he is, nevertheless, limited by the statute to $10 a day. The statute, itself, provides:

"That from and after the passage of this act, the compensation of auditors appointed by the court to audit the accounts of administrators, executors and trustees, and of *commissioners* appointed to make distribution of the proceeds of sheriffs', assignees' and other judicial sales, shall not exceed ten dollars for each day necessarily engaged in a case, unless the court for special cause shown allows a higher rate of compensation not exceeding fifteen dollars per day: *Provided,* That where the estate or the proceeds of the sale or sales do not exceed one thousand dollars, the rate of compensation shall not exceed five dollars per day": Act of June 4, 1879, P. L. 84 (Italics supplied.)

The Act of June 4, 1879, does not apply to this case for several reasons.

First, the "Auditor" or "Master," which is a better term for the services performed here, was appointed specifically under the Act of April 20, 1846, P. L. 411, *not the Act of June 4, 1879*. The appointment was made on the petition of Elio D'Appolonia. Said petition specifically prays for the appointment of an auditor under the Act of April 29, 1846, not the Act of June 4, 1879. The order appointing the auditor provides:

"And now, this 30th day of October, 1959, consideration of the within petition, William H. Eckert, Esq., is

appointed Auditor to pass upon the exceptions filed to the Sheriff's Special Return at the above number and term and to make report to the Court of his findings, together with a schedule of distribution." (Italics supplied.)

We do not perceive that by any stretch of imagination or language can the auditor in this case be considered to fit the language of the Act of 1879. He was not an "auditor appointed by the court to audit the accounts of administrators, executors and trustees," nor was he a *commissioner* appointed to make distribution of the proceeds of sheriffs', assignees' and other judicial sales. Indeed, his duties closely parallel those of a Master appointed to resolve disputed questions of law and fact rather than those of an accountant, whose only task is to make arithmetical computations and distribute funds accordingly.

The Act of April 20, 1846, under which William H. Eckert, Esq., was appointed "auditor" or "master" makes no reference to the compensation to be paid the auditor for the services rendered.

It would be grossly unjust to limit the auditor to $10 a day in view of the fact that all of the parties have agreed that the fee requested, and ordered paid by the court, is fair and reasonable in view of the quantity and quality of the work done. The master considered and decided correctly a difficult case of first impression. Certainly neither the essence nor the language of the Act of June 4, 1879, applies in this case. There is no foundation in reason or justice for a proposition which holds that the auditor in this case, a distinguished member of the bar, should bear the lion's share of the cost of the litigation, in view of the tremendous amount of time and work spent in compiling his report.

The Supreme Court of Pennsylvania has recognized the inapplicability of the Act of June 4, 1879, to those

situations in which an auditor was required to perform tasks of an unusual and trying nature. The case of Porter's Appeal, 30 Pa. 496, dealt with compensation under the Act of March 29, 1819, the forerunner of the Act of June 4, 1879. In that case, the court held that the act which set a fixed per diem of $2 daily for auditors did not apply in that case, the reason being that the duties performed by the auditor were not such as were contemplated by the statute. "They required them to perform a duty which the statute, in fixing the *per diem*, did not contemplate; and hence, there is no reason or justice in insisting that they shall be compensated only according to the rule of the statute": Porter's Appeal, 30 Pa. 496, 499, 500. Even if the auditor in the case at bar were within the language of the statute, the decision of the court in Porter's Appeal would make the act inapplicable. In view of the fact that the parties have already agreed on the reasonableness of the fee, and since this is a case to which the Act of June 4, 1879, is not applicable, the exceptions of plaintiff's assignee to the amount of the auditor's fee will be dismissed.

We must now consider the third and final proposition presented by East Hills Center, Inc. It is contended that any fee paid the auditor should be borne not only by the fund remaining after the payment of taxes and other claims, but also from the funds of the successful excepting claimants. We find no basis for this contention.

The audit was caused by the failure of plaintiff's assignee to honor the claim of D'Appolonia. Thereafter, D'Appolonia successfully sought the remedies permitted him by law.

We know of no reason to impose any part of the costs of the proceedings upon the successful claimant nor would it be equitable to do so. We can find no case where a successful litigant, not guilty of any

improper or inequitable conduct, has been saddled with the costs of the litigation. The parties in this case standing on equal footing and with no circumstances present which would demand a deviation from the rule, the costs of the proceedings, including the payment of the auditor's fee, should be paid out of the fund with no part of it to be assessed against the amount due the successful claimants.

*Order of Court*

And now, to wit, February 23, 1961, after argument and upon consideration thereon, the several exceptions filed ex parte East Hills Center, Inc., plaintiff's assignee, are hereby dismissed.

Eo die, exception noted and bill sealed.