JACKSON, *ex dem.* CORSON and SEBRING, *against* CAIRNS and COLES.

EJECTMENT for lands, &c. in *Northfield*, in the county of *Richmond*, tried before the Chief Justice, on the 31st of *May*, 1821.

*Jacob Corson* died seised and possessed of the premises in question, and other real estate, in 1772, leaving three children : *Mary*, the wife of *John Simonson* ; *Cornelia*, wife of *Ernest Linder*, and, after his death, wife of *James Duffie*, and, after his death, wife of *Gozen Ryers* ; and *Elizabeth,* wife of *Jacob Sebring*. *Mary*, the wife of *Simonson*, died in 1779, leaving two children, *Cornelia*, one of the lessors of the plaintiff, and *John Simonson*, who is now living. *Cornelia*, at the age of 19 years, married *Daniel Corson*, in 1791, from whom she was legally divorced on the 4th of *December*, 1810, by a decree of the Court of Chancery, dissolving the marriage. *Cornelia Ryers*, before her last marriage, and whilst she was the wife of *Duffie*, occupied, with her husband, the premises in question. She died on the 13th of *July*, 1795, without issue, and *G. Ryers* died in *January*, 1802. *Jacob Sebring*, husband of *Elizabeth Sebring*, the other lessor of the plaintiff, who was married before the death of her sister, Mrs. *R.*, died on the 4th of *August*, 1803. It was proved, that *Gozen Ryers* was in possession of one half of the *Corson* property, including the premises in question, from the time of his marriage with *Cornelia C.*, until his death, and that his son, *John P. Ryers*, held possession of it, until after the sale of it to the defendant, *Cairns*, on the 7th of *August*, 1805. *G. Ryers* claimed the property as his own, by purchase from *Terence Reilly* ; and such claim was asserted before and after the death of his wife. Since the sale to *Cairns*, he has been in possession. The other half of the *Corson* property had been held by *John Simonson*, and

*Where a wife joins with her husband in the execution of a deed of her own lands, but does not acknowledge the deed before a magistrate, according to the statute, her right is not devested.*

*Where the husband was seised of lands in right of his wife, and the wife died in 1795, and the husband afterwards continued in possession of the land, claiming it as his own, and making permanent improvements thereon, and, in 1800, executed a mortgage of the land as his own : Held, that the husband, after the death of his wife, was a tenant at sufferance ; and his continuance in possession was not adverse or hostile to the true owners, or heirs of the wife.*

*A party having right to land, has, in every event, twenty years*

to make an entry ; and if under legal disability when his right of entry first accrued, he may, though twenty years have elapsed, bring his action within ten years after his disability is removed.

those claiming under him, for many years, and as far back as the witnesses could remember.    *G. Ryers* built several houses on the part possessed by him, in one of which *J. Johnson* lived in 1796.

The defendants set up an adverse title and possession, and gave in evidence ; 1. A deed from *Jacob Sebring*, jun. and *Elizabeth*, his wife, dated *April* 2, 1776, to *John Simonson*, and *James Duffie*, for 600 pounds, in fee, of one third of all the real estate, &c. of which *Jacob Corson*, jun. died seised, which deed was duly acknowledged and recorded.    2. A deed from *Terence Reilly* to *Gozen Ryers*, dated *January* 30, 1788, in fee, of the one half of all the real estate, &c. of which *J. C.* jun. died seised, for the consideration of 1000 pounds.    3. A mortgage of the premises in question, from *Gozen Ryers*, dated *September* 21, 1792, to the *New Loan Officers* of the county of *Richmond*, which mortgage was paid off by *Cairns*, on the 3d of *April*, 1808.    4. A mortgage of the same premises, by *Gozen Ryers*, to *Richard Waln*, to secure the payment of 2000 dollars, dated *June* 5, 1800 ; and the proceedings to foreclose the mortgage, in Chancery, and a deed of a Master, under a decree of fore-closure and sale, dated *August* 5, 1805, to *Cairns*, for 6300 dollars.    5. A mortgage from *John P. Ryers* to *Richard Waln*, of thirty-five acres of the premises, for secu-ring the payment of 1500 dollars, dated *July* 1, 1802.

It appeared, that the declaration in the cause was served on the defendant, *Coles*, the 17th of *May*, 1817.

To rebut the defence of adverse title, the plaintiff gave in evidence a deed, dated *January* 23, 1788, from *Gozen Ryers*, and *Cornelia*, his wife, to *Terence Reilly*, for one half of all the lands, &c. of which *Jacob Corson*, jun. died seised, but which was never acknowledged by the wife ; nor was it proved and recorded until *October* 27th, 1812 ; and was, therefore, read in evidence as the deed of *G. Ryers* only.

A verdict was taken for the plaintiff, for three fourths of the premises in question, subject to the opinion of the Court, on a case, with leave to either party to turn the same into a special verdict.

*Van Wyck* and *M'Garaghan*, for the plaintiff, contended, 1. That no adverse possession commenced until after the purchase by *Cairns*, under the sale on the foreclosure of the mortgage, in *August*, 1805.

2. That the pretended title derived from *Terence Reilly*, was a nullity; *Cornelia Ryers* never having acknowledged the deed to him.

3. That a husband cannot, by an act of his, disseise his wife of her lands, or work a discontinuance of her estate.

4. That *Cornelia Corson*, one of the lessors, having brought her action within ten years after the death of her husband, was entitled to one fourth; and the other lessor, *Elizabeth Sebring*, having also brought her action within twenty years from her husband's death, was entitled to recover one half of the premises.

They cited *Adams on Ejectment*, 38. note. 2 *Salk.* 423. 2 *Lord Raymond*, 830. *Buller's Nisi Prius*, 130. 2 *Caines' Rep.* 174. 3 *Johns. Cases*, 109. 124. 128. 1 *Johns. Rep.* 156. 4 *Johns. Rep.* 202. 7 *Johns. Rep.* 157. 9 *Johns. Rep.* 163. 174. 10 *Johns. Rep.* 143. 13 *Johns. Rep.* 555. 553. 16 *Johns. Rep.* 110. 18 *Johns. Rep.* 361.

*G. Griffin*, for the defendants, contended, 1. That it was to be presumed, under all the circumstances of the case, that *Gozen Ryers*, at the time of his death, had a legal title to the premises in question.

2. That there having been an adverse possession of more than twenty years, *Elizabeth Sebring* was barred, in consequence of her not having prosecuted her claim within ten years after the termination of her coverture. He cited *Jackson* v. *Newton*, 18 *Johns. Rep.* 361. *Jackson* v. *Thomas*, 16 *Johns. Rep.* 93. *Slywright* v. *Page*, 1 *Leo.* 166. *Van Dyck* v. *Van Beuren*, 1 *Caines' Rep.* 89. 91. *Ballant. on Limit.* 23, 24. 6 *Comyn's Dig.* tit. *Seisin*, (*F.* 1.) *Co. Litt.* 57. *b.* 6 *East*, 80. 4 *Taunt. Rep.* 826.

SPENCER, Ch. J. delivered the opinion of the Court. It was decided by this Court, in the cases of *Jackson* v. *Sears*, (10 *Johns. Rep.* 435.) and *Jackson* v. *Stevens*, (16 *Johns. Rep.* 110.) that a grant in fee, by the husband and wife, of

the wife's lands, the deed not being acknowledged by her according to the statute, passed only the husband's interest, and that the estate, after his death, reverted to her and her heirs. At the common law, the alienation of a husband, who was seised in right of his wife, worked a discontinuance of her estate. This was remedied by the statute of 32 *H.* VIII. ch. 28. s. 6., and which has been re-enacted here, (1 *Greenleafe's Ed. L. N. Y.* 393.) and continued in the successive revisions of the statutes. The act was passed the 3d of *March*, 1787. The 2d section declares, that no fine, feoffment, or other act, made or done by the husband only, of lands, the inheritance or freehold of the wife, during coverture, shall work a discontinuance, or be prejudicial or hurtful to the wife, or her heirs; but that the wife, and her heirs, shall and may enter into all such lands, and hold the same according to their rights and titles therein, as if no such fine, feoffment, or other act, had been done.

The deed to *Reilly*, in *January*, 1788, although the wife joined in it, was not within this statute, for it was an act entirely null and void as to her. The statute intended, where the conveyance was to devest her right, that she should aliene according to law, that is, by a deed acknowledged by her before a magistrate thereto authorized. That deed then operated only as a deed from *Ryers*, and did not devest the right of his wife, or her heirs.

When, therefore, *Reilly* re-conveyed to *Ryers*, the latter acquired no new right, but was merely re-invested with his former estate, the right to the possession during the coverture. The mortgage to the new loan officers, in 1792, by *Ryers*, is open to the same remarks. It had no effect on the wife's rights.

It becomes wholly unnecessary to consider the effect of *Ryers'* mortgage to *Waln*, in *June*, 1800, for this action was brought within seventeen years thereafter.

*Cornelia Ryers* died in *July*, 1795, and it becomes a question, whether the continuance of *G. Ryers* in possession from that time until his death, in *January*, 1802, acquired the character of a hostile and adverse possession as against the heirs of his wife. It is asserted by the defendant's counsel, that his possession became hostile and adverse imme-

diately after the death of his wife, and they rely on the facts of his having erected buildings on the premises as early as 1796, and his claiming the premises to be his property.

We must consider Mrs. *Ryers* as entitled to that part of the *Corson* estate which she possessed before her marriage with *Ryers*, and which he possessed during the coverture, and afterwards in severalty. There is no evidence that the co-parceners ever made partition, but the undisturbed possession of one moiety of the *Corson* estate, by *Simonson*, and of the other by Mrs. *Ryers* and her husband, authorizes a presumption of a release among the co-parceners.

As to the right of *Cornelia Corson* to recover, the counsel for the defendants makes no objection. Indeed, there is no pretence to controvert it. She was a *feme covert* when Mrs. *Ryers* died, in 1795, and she continued so until *December*, 1810, when she was divorced *a vinculo matrimonii*. She, and her brother *John Simonson*, according to the 5th rule of descent, (1 *Greenl. Ed. L. N. Y.* 207.) inherited the share which their mother *Mary* would have inherited had she survived; and, consequently, *Cornelia Corson* became entitled to *one fourth part of the premises*, this suit being brought within seven years after she became discovert.

As to *Elizabeth Sebring*, she was married to *Jacob Sebring* before Mrs. *Ryers's* death. *Sebring* died in 1803. Unless, then, *G. Ryers* merely continuing in possession after the death of his wife, in 1795, claiming the premises as his, and erecting buildings thereon, constitutes an adverse possession, there is nothing to bar Mrs. *Sebring's* right to recover. It is observable, that *G. Ryers* made no conveyance of the premises after the death of his wife, until the 5th of *June*, 1800, when he executed a mortgage to *Waln*. I put out of view the deed to *Reilly*, and his conveyance to *G. Ryers*, as void and nugatory acts ; *Ryers* must be considered as holding and enjoying the premises in consequence of his marital rights, and he was a tenant at sufferance after the death of his wife. " An estate at sufferance is where one comes into possession of land by lawful title, but keeps it afterwards without any title at all." (2 *Bl. Com.* 149.) " And this estate may be destroyed whenever the true owner shall make an actual entry on the lands, and oust the tenant;

for, before entry, he cannot maintain an action of trespass against the tenant by sufferance, as he might against a stranger, and the reason is, because the tenant being once in by a lawful title, the law, which presumes no wrong in any man, will suppose him to continue upon a title equally lawful; unless the owner of the land, by some public and avowed act, such as entry is, will declare his continuance to be tortious, or, in common language, wrongful." (2 *Bl. Com.* 149, 150.) We perceive, then, that *Ryers'* continuance in possession after the termination of the estate he held in right of his wife, was a tenancy at sufferance, not tortious as regarded the true owners, and, consequently, not hostile or adverse to their right. His claim of title, and building on the premises, can have no effect, for it does not appear that this was ever brought home to the knowledge of the lessors. I do not mean to admit, that had the claim been known to them, that a mere claim of title by a tenant at sufferance would create a disseisin, or a possession adverse to the true owner. It is unnecessary to decide upon the operation of the mortgage by *Ryers* to *Waln*, in 1800, or whether that constituted an adverse possession, although I am of opinion it did not; and that there never was an adverse possession until *Cairns'* entry, subsequent to the sale in 1805. But, if it be admitted, that an adverse possession commenced in 1800, it does not bar the right of entry of Mrs. *Sebring*. There is no doubt, that a party has, in every event, twenty years to make an entry; and if under disability when the right or title of entry first accrued, then such person may, notwithstanding twenty years have expired, bring an action, or make an entry, within ten years after the disability is removed. Mrs. *Sebring* having become discovert in 1803, cannot avail herself of this provision of the statute, giving her ten years after the disability removed. Still she is not in a worse situation in consequence of her disability, than a person having no disability. She has her full twenty years to make her entry, from the period of her dispossession, which, at all events, did not take place until 1800, and this suit was instituted in 1817. (*Smith* v. *Burtis*, 9 *Johns. Rep.* 181. 3 *Johns. Ch. Rep.* 136, 137.) I have been more particular in stating the reasons of the deci-

sion of the Court in this case, than was necessary, as all the principles were decided by this Court upon a state of facts between the same lessors and *Cairns,* on a former occasion, but that decision was not reported. We then decided, that *Ryers'* continuance in possession was not adverse, and that the lessors were not barred by the statute of limitations.

The deed from *Jacob Sebring,* and *Elizabeth* his wife, to *Simonson* and *Duffie,* for one third of the real estate whereof *Jacob Corson* died seised, dated the 2d of *April,* 1776, was not given in evidence in the former case; but the defendants claim no title under that conveyance, and have not connected themselves with it, and have not relied upon it in the argument. No effect, therefore, can be attributed to it, especially as Mrs. *Ryers* possessed one half of the whole *Corson* property before her marriage with *Ryers,* and as he, also, by virtue of that marriage, possessed to the same extent. There must be judgment for the plaintiff for three fourths of the premises in question.

Judgment for the plaintiff, accordingly.