## FAIRCHILD *v.* CHASTELLEUX.

### In Error.

Under a deed of conveyance of lands to husband and wife in fee, they hold not in moieties, but in entireties; each has an entirety of interest with the right of survivorship, so that neither can convey any part thereof without the consent of the other.

In such case, the husband may maintain, in his own name, *an action of trespass quare clausum fregit*, for cutting down and carrying away timber.

THIS was a writ of error to the Court of Common Pleas of Bradford county, to remove the record of an action of trespass quare clausum fregit, for cutting and carrying away timber, brought by Cæsar Laurent Comte de Chastelleux, the defendant in error, against Abel Fairchild and Reuben White.

To the declaration, which was in the usual form, Abel Fairchild, one of the defendants, pleaded *not guilty*, and thereupon issue was joined.

The cause was tried, on the 13th of June, 1844, at a special court held in Towanda, Bradford county, before George W. Woodford, president, and John Laporte, one of the associate judges of the Court of Common Pleas of said county.

All the material facts necessary to a correct understanding of the questions decided, are fully stated in the charge of the court below to the jury, which was excepted to, generally, by both parties.

The following are the material parts of the charge, which was delivered at considerable length:

" The plaintiff alleges that the trespass in this case, if any, was committed on two tracts of land surveyed on warrants to Samuel Cochran and Peter Polk, and to these two tracts he has shown a perfect title in himself and wife. The first question which is raised for the attention of the jury is, does this title cover the place in which the trees were cut by the defendant, or, in other words, has the plaintiff satisfied the jury that the Cochran and Polk warrants were surveyed and located where he claims they were? In passing on this question, the jury are to understand that the location of these warrants *somewhere* is to be taken as established; for in 1794 we find the surveys of them returned into the land-office, and patents granted to Robert Morris, and since that time the existence of such surveys has never been questioned. A presumption of law arises from this lapse of time, that these warrants were actually located on the ground according to law, and this presumption is absolutely conclusive. So that we are not to embarrass ourselves with conjectures whether these warrants were ever legally surveyed. We must take that as an established conclusion of law.

Then we have the testimony of Major Flowers and Col. Kingsbury in support of their location in this place. They found no marks on these tracts which agreed with the dates of the surveys which were in 1792. The marks counted back to 1788, but Col. Kingsbury says that the surveyors commenced the location of this whole body of warrants, as shown by the corrected draft in evidence in 1788, and did not finish until 1792. These two tracts are part of a large body of adjoining surveys which call for each other, and on some of these tracts, though two miles distant from these, marks were found agreeing with the dates of surveys. Now, if any of the tracts of this connected body can be located, the rest can be, and Major Flowers has placed them where the plaintiff claims they are. He has known them as lying in that place for more than twenty years; taxes have been paid on them from the time the county was organized, and there has not been a syllable of proof going to locate them elsewhere. Under such cir-

cumstances, obliged to believe them located somewhere, can the jury entertain a doubt of their location where the plaintiff claims them ? It is for the jury to locate these warrants, but under evidence so full and uncontradicted, it is not probable they will encounter much difficulty in this part of the case. If you should locate them here, and should believe that the surveyor adopted old marks already on the ground, this would not now vitiate the surveys.

" If the jury are satisfied that plaintiff's title applies to the lands on which the timber trees cut by defendant were growing, the next question for them will be, how many did he, or others for him, cut down and carry away, and what was their value ? And these topics of inquiry constitute the plaintiff's case, as it is submitted to the jury.

" Next as to the defence. The defendant insists that the plaintiff is not entitled to recover in his own name, for he has shown that the freehold belongs to him and his wife, as tenants by entireties, and as, on the death of either of them, the whole estate would go to the survivor, they *must* join in any action which concerns that freehold. Undoubtedly, as a general rule, joint-tenants must join in any action which concerns their estates, but in respect to the wife's real estate, the law is well settled, that an action for damages for cutting down timber trees may be maintained in the husband's name alone ; and although a species of joint-tenancy is established by a conveyance to husband and wife, yet an action in damages for trespass on the husband's possession may be maintained in his name. Trespass is an injury to the possession. The party in possession of real estate can alone bring the action, and in cases like this, where there is no actual possession of the land, we resort to the title only, for the purpose of ascertaining who has the legal or constructive possession. Now if De Chastelleux and wife had been in the *actual possession* of this land, the law, in virtue of her relation as his wife, would have referred the possession wholly to him, and when the trespassers entered, the injury would have been to *that possession* of the husband, and therefore he might have sued for damages in his name.

" But in contemplation of law, they *are* in possession, the title being in them, and the husband's right of action is just as complete as it would have been if, in point of fact, as well as in the eye of the law, they had been on the ground. It is not enough to say that the cause of action in this case would survive to the wife, for so it would, when a man trespassed on the wife's separate estate, and yet the authorities are express that in such case the husband may sue alone. The court therefore decide, that whilst the wife of the plaintiff might

properly enough have been joined, the action is maintainable in the name of the husband alone."

The jury rendered a verdict in favour of the plaintiff for $600; and the defendant took out a writ of error.

The errors assigned are stated in the opinion of the court.

*Case,* for plaintiff in error.

This was an action of trespass quare clausum fregit, brought in the name of the husband alone; it should have been brought in the name of the husband and wife. The land on which the trespass was alleged to have been committed belonged to the husband and wife, under a deed of conveyence to them in fee. They were not joint-tenants, but tenants respectively of the entirety of the fee, with the right of survivorship. The husband was not the exclusive possessor; he could have no possession adverse to the possession of the wife. The injury complained of was, that the inheritance was injured. The inheritance of the wife was injured just as much as that of the husband, and therefore they ought to have sued jointly. They each had an entirety of interest. He cited Roper on Husband and Wife, 51; 31 Law Lib. 39; Cro. Car. 506; 32 Law Lib. 136; Fairchild *v.* Chastelleux, 8 Watts, 412; Klapp *v.* Inhabitants of Slanton, 10 Pick. 463, 470.

*Elwell* and *Williston,* for the defendant in error, argued, that the action was well brought in the name of the husband alone, although his wife might have been joined with him; they hold the title to the land by entireties, each owning the whole. The interest of the wife is not so great in lands thus held, as in lands held by the husband and wife, in right of the wife. And yet the husband may maintain an action in his own name for entering upon the wife's land and felling the timber trees. 2 Comyn's Dig. 247, title *Baron and Feme,* in note; Id. 251; 1 Rob. 348; 2 Vent. 195; Fairchild *v.* De Chastelleux, 8 Watts, 412. Clearly, then, he may sue alone for cutting timber upon lands in which he has an interest jointly with his wife. He has the entire control of lands thus situate. He may mortgage it for his life; or make a lease which will authorize the lessee to recover possession in ejectment. Jackson *v.* McConnell, 19 Wend. 175; Barber *v.* Harris, 15 Wend. 615. He may, without impeachment of waste, cut and use the timber for his own purposes. The plaintiff had the possession of the land; if not the actual, he, at least, had the constructive possession. The injury was to his possession and also to his freehold, and therefore the law gives to him redress by action.

The opinion of the court was delivered by KENNEDY, J.

This is an action of trespass, brought in the court below by Cæsar Laurent Comte de Chastelleux, the defendant in error, against Abel Fairchild and Reuben White, the plaintiffs in error, for breaking into the close or land of the said defendants in error, with force and arms, and there, without the consent of the latter, felling, cutting down, and carrying away four hundred white-pine trees there growing, of the value of one thousand dollars, and converting them to their own use. The land, upon which the trespass was committed, was held by Chastelleux and Louise Zepharine de Damas, his wife, under a deed conveying the same to them in fee, from Vincent Le Roy, who had a regular title thereto, at the time, from the Commonwealth of Pennsylvania.

The errors assigned are, that the court below, on the trial of the cause, erred in charging the jury that the action could be sustained in the name of the plaintiff alone, when, by the laws of the land, it should have been brought in the name of the plaintiff and his wife.

Second. That the court erred in charging the jury that the defendants could not defend under the purchase made by one of them from Jeremiah Heydecker.

Third. That the court erred in charging, that the purchase of the timber of Heydecker could not be considered in mitigation of damages.

The fourth error is, that the verdict and judgment were rendered in favour of the plaintiff below, when, by the laws of the land, they should have been in favour of the defendants below.

This last error amounts to nothing; and the second and third errors may be dismissed with the observation, that as it does not appear that Heydecker ever purchased the timber cut and taken by the defendants below from the plaintiff, who, with his wife, were the unquestionable owners of it; nor that he had any authority, either to cut or to sell and dispose of the same, he could give no right or authority to the defendants, or either of them, to cut and take it away. The defendants, therefore, acted at their peril in cutting and taking the timber; and, so far as the interest of the plaintiff below is concerned, it is no mitigation for them to say, that they confided in any right or authority which Heydecker might have said he had to or over the timber. If Heydecker pretended to have any thing of the kind, it was their place to look into it, and to see that it was well founded.

The principal question, however, arises on the first error, and would seem to require a more particular notice than has been given to the others. Under the deed of conveyance from Vincent Le Roy, the

plaintiff below and his wife took and held the estate in the land thereby given to them by *entireties* and not by *moieties*. They held *per tout et non per my*, so that the husband could not, by his conveyance alone, divest his wife of her interest, if she should survive him, in which latter event she would be entitled to the whole. Co. Lit. 187; Freestone *v.* Parrott, 5 Term Rep. 652; Beck *v.* Andrews, 2 Vern. 120; Pre. in Chan. 1; Green *v.* King, 2 Blk. Rep. 1211; Day *v.* Wilson, 4 Barn. & Ald. 303, and 2 Preston on Abstracts, 39. But notwithstanding they held the fee, not in moieties, but in severalty, with the right of survivorship, so that neither can alien any part thereof without the consent of the other,—Jackson *v.* Stevens, 16 Johns. 110; Corson *v.* Cainny, 20 Johns. 301, and Jackson *v.* McConnell, 19 Wend. 175,—yet the husband may be said to have the absolute control of the estate during his life, and may convey or mortgage it during that period. Barber *v.* Harris, 15 Wend. 615. And it would seem to be reasonable, that if a husband can maintain, in his own name alone, such action as the present for a similar trespass and injury committed on the land of his wife, and which he holds entirely in her right, he may maintain the present action. The general rule in regard to husband and wife joining in actions, as laid down in 2 Bac. Abr. tit. *Baron and Feme*, K, (Bouvier's ed.) 56, is, that in those cases where debt or cause of action will survive to the wife, the husband and wife are regularly to join in the action: as in recovering debts due to the wife before marriage, in actions relating to the freehold or inheritance, or injuries done to the person of the wife; for which 1 Roll. Abr. 348, l. 18, Moor, 332, are cited as authority. In Com. Dig. also, tit. *Baron and Feme*, (V) 248, (Hammond's ed. London, 1822,) it is stated, that they ought to join in actions which arise during the coverture, if the wife may have an action for the same if she survive, as in detinue of charters of the wife's inheritance; for which 1 Roll. Abr. 347, 649, is cited, the same as in Bac. Abr. And, accordingly, husband and wife ought to join in waste, upon a lease for years by the husband and wife, when seised in right of his wife. 2 Com. Dig. tit. *Baron and Feme*, p. 249, same ed. And again, in 1 Roper on Husband and Wife, 215, 32 Law Lib. 136, it is said, that in all cases where the wife's freehold is to be recovered, she must join with her husband in the proceedings, as in instances of disseisin, 1 Bulstr. 21; or of injuries done to the inheritance, as by pulling down houses, &c., or where an action of covenant is necessary to compel further assurance upon a conveyance to husband and wife. Midlemoore *v.* Goodale, Cro. Car. 505. But when the title does not come in question, and the action is merely personal, and seeks a compensation in *damages* for an

injury done to the husband's interest in his wife's estate during the marriage, then it is in his election whether he will join his wife in the action or not.   Thus, he may maintain an action of covenant against a lessee of his wife's estate for not repairing it.   Bret *v*. Cumberland, Cro. Jac. 399; 1 Roll. Rep. 369, S. C.; Castrell *v*. Moore, Het. 143; 2 Bulst. 14; Treigneil *v*. Reeve, Cro. Car. 437.   So, if a stranger cut timber upon the land of the feme, the husband and wife may join in an action of trespass.   15 Ed. 4, 9 b; Cro. Car. 347; 1 Roll. Abr. 348, 1. 18;   2 Com. Dig. tit. *Baron and Feme*, X.   So, they may join in quare clausum fregit.   See 2 Bac. Abr. tit. *Baron and Feme*, K, (Bouvier's ed.) 159.   But Lit. Rep. 285, seems contrà.   According to the general rule, as thus stated from Bac. Abr., Com. Dig., and Roper on Husband and Wife, it would seem that the wife of the plaintiff below ought to have been joined in this action, unless it be, as mentioned by Mr. Roper, merely personal, and brought to recover a compensation in *damages* for an injury done to the husband's interests in the wife's land, in which case the husband may sue alone.   This last position would seem to be supported in some degree by 1 Roll. Abr. 347, 1. 40; 1 Bulst. 21; Jones, 376; where it is laid down, and was adjudged, that the husband alone may sue for a trespass done upon the wife's land during the coverture.   That he may also have trespass for taking the charters of his wife's inheritance.   1 Roll. Abr. 348, 1. 32.   And so, for trespassing upon the wife's land by felling her trees he may sue alone or join his wife; for which 47 Ed. 3, M. 5, p. 9, is cited, in a note to 2 Com. Dig. tit. *Baron and Feme*, (V) 247. Yet notwithstanding these authorities, I must confess that it seems to me to be more rational and just that the husband should be required to join his wife in such cases, or otherwise he or his personal representatives, which would still be worse, may reap the whole benefit of a recovery for an injury done to the freehold or inheritance of his wife, which may have deteriorated, if not rendered it almost worthless : as, for instance, where he happens to die after having obtained judgment, without having had execution of it, for the value of the timber growing on the wife's land, which was cut down and taken by the defendant, and was the only thing which rendered the land valuable ; his personal representatives would be entitled to have execution of the judgment, and he may by will give it to whom he pleases; thus, in effect, depriving the wife of her inheritance without her consent.   But seeing that the authorities referred to above go to establish the principle, that the husband, without joining his wife, may support and have an action of trespass against a stranger for cutting down the timber growing on his wife's land, or for cutting it down and carrying it

away, there would seem to be still more reason why he should be allowed to maintain it in the present case, because he has not only an equal, if not a greater control and authority over the estate during the coverture than he would have if it were his wife's, but he has likewise the same interest and right in the inheritance that she has, which is not the case where the inheritance belongs exclusively to her.

The judgment is therefore affirmed.