## Krider v. Hartzell, Appellant.

*Appeals—Paper-books—Failure to print evidence—Charge.*

1. Where an appellant fails to print in his paper-book a writing which is an essential feature of the case, the appellate court will accept as correct the statements made as to the paper by the trial judge in his charge.

*Husband and wife—Loan or gift of money—Presumption—Evidence.*

2. Where a husband receives from his wife money which is a part of her separate estate, the presumption is that he takes it as a loan and not as a gift. Whoever asserts that it is a gift has the burden upon him to prove it.

3. In a proceeding in which the transfer of a store from a father to a son was attacked, it was alleged by the son that his mother held a note of her husband for money loaned, and that when the transfer was made she accepted the note of the son for the full amount of the note of her husband, and canceled her husband's indebtedness to herself. A friend of the family was permitted to testify as to conversations between husband and wife not as to whether the husband had received the money, that being admitted, but whether it was proper and necessary for him to give her a note as evidence of the debt. This was finally done at the suggestion of the witness. *Held,* that the declarations of the husband were not self-serving, were against his individual interest, and were properly admitted as bearing upon the consideration for the note to his wife.

Argued May 5, 1909.  Appeal, No. 226, April T., 1908, by defendant, from judgment of C. P. Somerset Co., Dec. T., 1898, No. 91, on verdict for plaintiff in case of S. A. Krider v. Albert S. Hartzell, Administrator of M. H. Hartzell, deceased.  Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ.  Affirmed.

Trespass against the sheriff to recover for goods alleged to have been unlawfully sold.  Before Gillan, P. J., specially presiding.

The opinion of the Superior Court states the facts of the case.

When the Rev. J. W. Hutchinson, a witness for the plaintiff, was on the stand, he was asked this question:

"Q. Mr. Hutchinson, you are a Lutheran minister?  A. Yes, sir.  Q. Where do you live now?  A. Milroy, Mifflin county. Q. You were located in Jennertown, this county, at one time? A. Yes, sir.  Q. Do you know Rev. Samuel Krider?  A. Yes, sir.  Q. How long have you known him?  A. Thirty-five or forty years.  Q. Do you know Mrs. Krider?  A. I have known her since I was a little boy.  Q. Were you present at any time when there was a conversation between Mr. and Mrs. Krider, relative to the indebtedness of Mr. Krider to his wife and the giving of a note?"

Mr. Berkey: Objected to as incompetent, irrelevant and immaterial.  The date has not been fixed.  It may have been very remote, and certainly the offer is indefinite.

Mr. Ruppel: We propose to prove by the witness on the stand that he was present at a number of conversations between Mr. and Mrs. Samuel Krider relative to the indebtedness of Samuel Krider to his wife; that Mrs. Krider frequently spoke of wanting a note from her husband, and that the witness advised that a note be given for the indebtedness of Krider to his wife; that these conversations extended over a period of probably twenty years, the last we think shortly before the $1,000 note was given at Hooversville.

Mr. Berkey: This offer is objected to as incompetent, irrelevant and immaterial.  The offer is indefinite.

The Court: The question we are trying is the bona fides of the

alleged sale made by Samuel Krider to his son. In order to establish that sale, it appearing that the alleged indebtedness which he owed to his wife was used in that transaction, it became necessary for the plaintiff to establish that the wife had a separate estate. It appearing that she received that money, much of it, at least fourteen or fifteen years before the alleged note was given by her husband to secure that indebtedness, and the question being one of fraud, it is competent for the plaintiff to show anything which may explain the delay in her taking the note from her husband. Therefore, the objection is overruled, the evidence is admitted and a bill is sealed for the defendant. [3]

Mr. Ruppel: "Q. Mr. Hutchinson, you hear the question. Go on in your own way and state what you know in regard to this matter. A. With respect to the note? Q. Yes, the giving of the note. A. Having been acquainted with Mrs. Krider from my infancy, we were raised close together, we were very intimate in a social way, and she had spoken to me very frequently about her husband giving her a note for the money that she had given to him, as I well knew she had received the money from her parents, with whom I was acquainted—even her grandparents. I would say, 'Yes, I think that would be proper; that would be right.' Time was passing along, so two or three months, or probably two or three years that would be up again, and she would refer to this. Well, I would repeat about the same, that I would think that would be proper; you didn't know what might happen; it was her money, and I thought he ought to give her a note. This continued along for a period of years until shortly after I think Mr. Krider had gone into business at Hooversville, and Mrs. Krider appeared to be very anxious about having a note. I guess I laid a little more stress then on the importance of Mr. Krider giving a note than I had done previous to that, and finally learned that Mr. Krider had given his wife a note. Q. You say you knew her father? A. Yes, sir. Q. Do you know whether he left an estate? A. Yes, sir. Q. Have you personal knowledge as to about what the share of Mrs. Krider was in that estate? A. Not definitely. Just in a general way. I thought it was from $1,200 to $1,500."

Objected to.

The Court: That is capable of direct proof.

Mr. Ruppel: "Q. As I understand, you didn't speak to Mr. Krider about this matter at all. A. Yes, sir, they were both together. Q. They were always together at these conversations? A. Yes, sir, she would appeal to me to know if I didn't think he ought to, and I said I thought he ought to. I told Mr. Krider so."

Plaintiff presented this point:

3. That the undisputed evidence in this case shows that S. Krider received over $1,000 of his wife's money out of the estate of her father, Samuel Royer, and money coming to her from her aunt. That said Samuel Krider received said moneys of his wife as a loan, and although a note was not given by him to his wife for said sums until June 12, 1897, it constitutes a valid debt of Samuel Krider to his wife.

If the said Samuel Krider received the moneys of his wife as a loan, and the presumption of the law is that it was a loan, he had a right to give her a note and prefer her to other creditors. [2]

Verdict and judgment for plaintiff for $1,200. Defendant appealed.

*Errors assigned* were (1) portion of charge, quoted in the opinion of the Superior Court; (2) answer to point as above; (3) ruling on evidence, quoting the bill of exceptions.

*J. A. Berkey,* with him *J. Huhl, Robert S. Murphy, Valentine Hay, A. L. G. Hay* and *C. L. Shaver,* for appellant.—The declarations of Mr. and Mrs. Krider to the witness, made at various times, covering a period of twenty years, as to moneys they alleged she received from her father's estate and had given to Mr. Krider and that she wanted a note from him therefor, were not admissible in evidence: Light v. Light, 21 Pa. 407; Young v. Com., 28 Pa. 501; Black v. Nease, 37 Pa. 433; Parvin v. Capewell, 45 Pa. 89.

*W. H. Ruppel,* with him *W. H. Koontz* and *J. G. Ogle,* for appellee.—There was no denial that the husband had received

this money from the wife, and the fact being established that the husband received the wife's money, the presumption of law is that he received it as a loan, not as a gift: Bergey's App., 60 Pa. 408; Young's Est., 65 Pa. 101; Hamill's App., 88 Pa. 363; Wormley's Est., 137 Pa. 101; Martin's Est., 181 Pa. 378; Hawley v. Griffith, 187 Pa. 306.

These declarations bear intrinsic evidence of the fact that they were not prepared for the occasion, were not intended as makeweight declarations, nor of being for self-serving purposes, and under the rulings of the courts were clearly properly admitted in evidence: Nichols v. Nichols, 133 Pa. 438; Light v. Zeller, 144 Pa. 570; Cornman's Est., 197 Pa. 125; Laughlin v. Laughlin, 219 Pa. 629; Sheesley's Est., 10 Dauph. 258; Kotz's Est., 11 North. 316.

OPINION BY BEAVER, J., July 14, 1909:

The action here is trespass against the sheriff of the county, the personal representative of whom was substituted after his death, for damages for the sale of a stock of goods contained in a storeroom at Windber, claimed by the plaintiff as having been sold to him, prior to the sheriff's levy, by his father. Upon the trial the principal issue of fact was as to notice given by the plaintiff to the public and to the plaintiffs in the writ, issued upon a judgment against the father, upon which the store was sold, as to the sale by the father to the son and as to the steps taken by the son to signify a change of possession. This question was submitted to the jury, but as to the manner of its submission we have no exception, save as to a single item of evidence offered by the appellant concerning which the court remarks in the charge to the jury.

The first assignment of error deals with this subject and is as follows: "There is one piece of evidence that seems to me important. I do not know how it will strike you, gentlemen. It is for you. It was argued on part of the defendant that this transaction was fraudulent, and that there was an effort to get away from these creditors, Love, Sunshine & Company, by Samuel A. Krider, the son, advertising the property to be sold at public auction. The effort to sell was proved by them and

they presented to you a sale bill, showing an advertisement. I know of no better way for my part to have carried the news to the world that S. A. Krider owned the store formerly owned by his father, than to have put up bills like that over the county, advertising it for sale. That would be to my mind evidence of the change of possession, because it was publishing to the world by public handbill that the property was the property of S. A. Krider, that he was the proprietor, that it had been sold, and that, as I understand it, before the execution was issued. I think I am right about that."

It clearly appears from the testimony of the plaintiffs in the execution upon which the property was sold that, upon the evening of the levy, a handbill was in the window of the store providing for a sale at auction on that evening of the goods therein, and that it was of a date prior to the date of the levy. One of the members of the firm, by whom the execution upon which the sale was made was issued, took this handbill down at the time of the sheriff's sale, and it was offered in evidence by the defendant. It is not printed, however, with the testimony, and we are entirely at a loss to determine what the character of it was, except as it is described in the most general way by the witness who took it down, and referred to by the court. That it was evidence bearing directly upon the question of the effort of the son to make public the notice of the purchase by him from his father of the goods to be sold cannot be doubted. It was introduced by the appellant. The court distinctly says that the effect of this evidence was for the jury. The judge who tried the case deemed it important, as it certainly was, and says: "I know of no better way for my part to have carried the news to the world that S. A. Krider owned the store formerly owned by his father than to have put up bills like that over the county, advertising it for sale." We find no distinct evidence that bills similar to the one offered in evidence were put up over the county. Indeed, we discover none as to any other bill than the one introduced by the appellant. It is to be observed, however, that the court did not state as a fact that other bills were put up over the county. If the bill printed, offered in evidence, was in appellant's paper-book, it might give us some intimation

as to whether or not it was a general handbill and was such as would, under ordinary circumstances, be posted in different places. The appellant having failed to inform us as to the character of the handbill by printing it with the testimony, we are at a loss to determine its character, and hence its importance on the question of notice of the sale and probable effect upon that question upon the general public. It appears very clearly from the testimony that this bill was posted in the store window and that it was visible to passers-by. It was, therefore, a public notice, and, in the absence of the bill itself, we assume that the remarks of the court in regard to its character were entirely proper. As to the time of its publication, the court was undoubtedly right that it was before the execution was issued. There is no distinct statement by the court that handbills similar to the one in the store window were put up elsewhere, but the court says: "I know of no better way for my part to have carried the news to the world than to have put up bills like that over the county, advertising it for sale." In view of the fact that this statement was coupled with the caution that the question was one for the jury and that the defendant did not call the attention of the court to it at the time in any way as a misstatement of fact, we are led to the conclusion that the appellant has no good ground of complaint. Giving to the statement the most that can be claimed for it, it was a slip on the part of the court to which its attention should have been called at the time by the appellant, if it was regarded as important.

The second assignment of error relates to the answer of the court to the plaintiff's third point, the point and answer being as follows: "Third. That the undisputed evidence in this case shows that S. Krider received over $1,000 of his wife's money out of the estate of her father, Samuel Royer, and the money coming to her from her aunt. That said Samuel Krider received said moneys of his wife as a loan, and although a note was not given by him to his wife for said sums until June 12, 1897, it constituted a valid debt of Samuel Krider to his wife. Answer: if the said Samuel Krider received the money of his wife as a loan, and the presumption of the law is that it was a loan, he had a right to give her a note and prefer her to other creditors."

The question of fact here was left to the jury—Did Krider receive the money of his wife as a loan? The question of law involved is correctly stated, that "The presumption of the law is that it was a loan," and, if so, "he had a right to give her a note and prefer her to other creditors." It is scarcely necessary to cite authorities for propositions of law so well settled and frequently held.

In Hawley, Trustee, v. Griffith, 187 Pa. 306, under facts similar to those involved in this case, it is said, quoting from Wormley's Estate, 137 Pa. 101: "'The rule of law applicable in such a case is that the mere fact of the reception of the wife's money by her husband makes him her debtor, and it requires no affirmative proof by the wife that he received it as a loan and not as a gift. On the contrary, if it is alleged afterwards, whether by the husband's heirs or by his creditors, that the money was received as a gift and not as a loan, the burden is upon those who make such allegation to prove it.' Many cases sustaining this proposition are cited by the learned justice and there is no room for controversy on this point." A careful reading of the testimony in this case fails to discover any evidence whatever on the part of the appellant that the money received by the wife of Samuel Krider and the mother of S. A. Krider from the respective estates of her deceased relatives was a gift to her husband.

The third assignment of error relates to the testimony offered by the plaintiff to show that the husband was indebted to the wife, being that of a neighbor who had knowledge of the fact that the wife had a separate estate and who had been consulted on various occasions by husband and wife as to the propriety of the former giving the latter a note for the amount which he had received from her from the estates of her father and aunt respectively. The allegation was that, in the transfer of the store from the father to the son, the mother had accepted the note of the son for the full amount of note of her husband, and interest thereon from its date, held by her, had canceled the indebtedness of her husband to her and held the note of the son in payment therefor. It became necessary, therefore, to establish the consideration for the note of the husband to the wife.

A friend of the family, therefore, was called who knew of the estate of the wife's father, of the probable amount of it, and who had been consulted frequently as to the propriety of the husband giving a note to his wife for the amount which he had received from her at sundry times. This testimony was objected to, and its reception constitutes the third assignment of error. The validity of the note of the husband to the wife was not the issue being tried. It was merely an incident in the trial, bearing upon the consideration which moved between the son, as the purchaser of the father's store, and the father, and bore upon the bona fides of the transaction. The conversation, therefore, which the witness had with the husband and wife in several instances, prior to any indebtedness on the part of the husband to other parties and before he engaged in the mercantile business, was not in the nature of self-serving declarations, usually so called. The testimony shows that the conversations were not as to whether or not the husband had received the wife's money, that being admitted, but whether it was proper and necessary for him to give her a note as evidence of the debt. This was finally done, at the suggestion of the witness who was called to testify in regard to the matter. This testimony was, as we regard it, entirely proper.

In Laughlin v. Laughlin, 219 Pa. 629, in a case in which the wife filed a bill in equity against the administrator of her husband to enforce an alleged trust in the purchase of certain stocks, in which a creditor of the husband intervened as defendant, the testimony of the witness, to whom the husband had related the facts connected with the purchase of the stocks, was admitted, for the purpose of establishing the trust. In that case as here the declarations of the husband were against his individual interest, and many of them being made at a time when no other parties had any contravening interest, we do not see wherein the testimony was open to valid objection.

The assignments of error are all overruled.

Judgment affirmed.