## Hottenstein's Estate.

*Decedents' estates—Husband and wife—Estates by entireties—Evidence—Declarations—Jurisdiction, O. C.—Attorney fees—Auditor's fee—Estoppel.*

1. Property, whether real or personal, held jointly by husband and wife vests in them estates by the entireties, and upon the death of one the other takes the whole, and the fact that a mortgage so held is payable two years after the death of the mortgagees is immaterial.

2. Securities held by entireties may be made the subject of an agreement, but a clear contract between husband and wife must appear to deprive the latter of her rights under the law in their joint estate, the husband having died.

3. When a security held by entireties is paid in whole or in part, in the absence of an express agreement, the law implies an agreement that the proceeds thereof be divided between husband and wife in equal proportions.

4. Where money so received by the husband is deposited in bank, and it is reasonably clear that a part of it belonged to the wife, the burden is upon the executor of the will of the husband decedent to show payment to the wife or a gift by her to the husband.

5. In such a case, the widow, having elected to take under the will, is not estopped from claiming one-half of this fund, no disposition thereof appearing in the will, and, in fact, the will having been made long before the testator received the fund.

6. A conversation by testator a few days before his death, in the absence of his wife, not a declaration against interest, is hearsay evidence, and the terms of the will of the husband giving the wife only the income of the estate cannot be regarded as establishing a joint intent and agreement that she was to have no larger interest in the mortgage, and that for that reason the same was made payable after her death.

7. The Orphans' Court has jurisdiction to determine this controversy, the executor having had the mortgage appraised and included among the assets of the estate in his account.

8. Attorney fees, when challenged, must be proved as other claims, and, when exceptions to attorney fees in an account are dismissed by an auditor without taking any testimony, it is error. Attorney fees may be fixed by an auditor or by the court, but not without being advised of the nature and character of the services rendered or of the value of said services. In the absence of such testimony, the minimum fee bill of the members of the bar was used by the court to determine the amount.

9. Auditor's fees, upon exception, can be fixed by an inspection of the report.

Exceptions to auditor's report. O. C. Lehigh Co., File No. 17012.

*Robert L. Stuart,* for exceptant; *George R. Booth,* for accountant.

RENO, P. J.—On March 12, 1921, Robert Arndt executed and delivered to Nathan Hottenstein and Mantana Hottenstein, husband and wife, a bond and mortgage for the payment of $4900 "upon the expiration of two years from and after the death of Mantana and Nathan Hottenstein." On March 25,

1921, Robert Arndt paid $2400 upon the principal of said mortgage, and the receipt for that sum is signed by both mortgagees. This sum of $2400 was deposited by Nathan Hottenstein in his individual bank account, and after his death was, with the accrued interest thereon, a part of the assets of his estate.

Nathan Hottenstein died testate May 19, 1922. By his last will and testament, dated April 11, 1918, he bequeathed $300 to his widow, all articles of household goods and consumable stores, and, after commanding the conversion of the remainder of his estate, directs the same be invested and that an income equivalent to 5 per cent. be paid to the widow during her life and that any excess be retained by the executor as compensation. After the death of Mantana Hottenstein, the proceeds of his estate are to be divided among his children in equal shares. Elmer E. Hottenstein is appointed executor thereof.

The executor filed an account and, *inter alia,* listed the mortgage and the bank balance as assets of the estate. Among the disbursements he listed the above-mentioned mortgage, stating that it was "not payable until two years after the death of Mantana Hottenstein, widow of defendant; and, therefore, not collectible." To this account Mantana Hottenstein filed exceptions, which were referred to an auditor.

The first exception before the auditor which is reviewed here challenges the inclusion of the mortgage as an asset of the estate. The exceptant claims that the mortgage vested an estate by entireties in her and her husband, and that, therefore, she took the whole of the balance of the said mortgage as survivor, and, consequently, the mortgage never became a part of the estate. The auditor, relying largely upon the testimony of Elmer E. Hottenstein, to which we shall hereafter refer, concluded that the mortgage was not held by entireties, but that the widow was, nevertheless, entitled to the mortgage by virtue of an agreement between her and her husband. The agreement found by the auditor was to the effect that Nathan and Mantana Hottenstein should share the mortgage equally, and that he having received the sum of $2400 paid upon the mortgage, as well as the sum of $100, which was the down-money in the transaction which gave rise to the mortgage, Mantana Hottenstein was entitled to the balance still due upon the mortgage. To this conclusion Mantana Hottenstein excepts here, and this is the first question requiring our attention. The auditor having awarded the $2500 mortgage to the exceptant, the question whether she takes it as a survivor or by virtue of an agreement would seem to be largely an academic question, but it will appear hereafter that a determination of the ground upon which the mortgage is awardable to her is required by other factors in the case.

It is fundamental that the property, whether real or personal, held jointly in the names of husband and wife vests estates by the entireties in them, and upon the death of one the other takes the whole: Rhodes's Estate, 277 Pa. 450; Sloan's Estate, 254 Pa. 346; Klenke's Estate, 210 Pa. 572; Bramberry's Estate, 156 Pa. 628. The fact that the mortgage is payable after the death of Mantana Hottenstein cannot control the decision: Heilig *v.* Heilig, 215 Pa. 256. It is not the nature of the security which determines the quality of the estate which the holders possess in it. If, at the time when it is placed in the joint names, the relation of husband and wife exists, the property is held by them as tenants by the entireties (Johnson *v.* Hart, 6 W. & S. 319; Stuckey *v.* Keefe's Exec'rs, 26 Pa. 397), unless the instrument of conveyance clearly indicates that they are to hold it in severalty: Young's Estate, 166 Pa. 645. Of course, while the subject of the estate cannot be adversely partitioned (Beihl *v.* Martin, 236 Pa. 519), it is possible that husband and wife may agree that property held by them which, by the terms of the instrument of conveyance,

appears to vest estates by entireties in them, shall be held and disposed by them upon other terms: Fredrick's Estate, 54 Pa. Superior Ct. 535. This was precisely the contention examined by the Supreme Court in Rhodes's Estate, 277 Pa. 450. There, against the widow's claim for the possession of certain securities held by the decedent and the widow jointly, the heirs set up a joint will which they contended was a contract making a different disposition of the joint securities. The Supreme Court held that the will was not a contract, but conceded that securities held jointly might be made the subject of an agreement, adding, however, that "a clear contract between husband and wife must appear to deprive the latter of her rights under the law in their joint estate."

To this point our conclusions are in harmony with those of the auditor. The auditor, however, felt constrained to find that the decedent and his widow had made an agreement, whereby each one was to have a one-half interest in severalty of the mortgage, or, more accurately, in the proceeds of land sold by them for the sum of $5000. The auditor's conclusions were based upon the testimony of Elmer E. Hottenstein, who was allowed to testify to a conversation which he had with the testator a few days before the latter's death, in the absence of Mantana Hottenstein, in which the testator said that the $2400 in bank was his, and then explained the reasons for certain provisions in his will. Before the auditor, objection was made to the competency of the witness upon the ground that, as executor of the estate, he held an interest adverse to that of the testator, and, therefore, under the Act of 1887, was incompetent. The auditor overruled this objection, and in his report strongly relies upon that testimony. It is apparent that here he fell into serious error. Conceding the competency of the witness, although we are not deciding this point, it is perfectly clear that Mantana Hottenstein could not possibly be bound by a statement made in her absence concerning a fund which she claimed. Such testimony is manifestly not a declaration against interest, and is, therefore, hearsay: Brown v. Kittanning Clay Products Co., 159 Pa. 267; Ranck v. Brackbill, 209 Pa. 499; Wheeler v. Ahlers, 189 Pa. 138; Burk v. Howley, 179 Pa. 539; Dosch v. Diem, 176 Pa. 603; Johnston v. Patterson, 114 Pa. 398; Mitchell v. Welch, 17 Pa. 339; Gordon v. Bowers, 16 Pa. 226; Wonsetler v. Wonsetler, 23 Pa. Superior Ct. 321. Hearsay testimony is not rendered competent by the circumstance that the declarant is deceased: McCauley v. Imperial Woolen Co., 261 Pa. 312; Bonnet v. Devebaugh, 3 Binn. 175; Galloway v. Ogle, 2 Binn. 468. The conclusion of the auditor seems also to be based upon a consideration of the terms of the will; that is to say, the fact that the will bequeaths to the widow only the income of the estate is regarded as establishing a joint intent and agreement that she was to have no larger interest in the mortgage, and for that reason the same was made payable after her death. Obviously, the terms of a contract cannot be found in or inferred from the provisions of a will made by one of the parties, and yet upon this theory the auditor considered that portion of the testimony of Elmer E. Hottenstein which related to the reasons for the testator making his will in the fashion in which he did. But such evidence is incompetent (Best v. Hammond, 55 Pa. 409; Woodman v. Good, 6 W. & S. 169; Porter's Appeal, 94 Pa. 332; Baker's Appeal, 115 Pa. 590), and, hence, the inference is not supported by either competent evidence or sound reason. It follows that this testimony must be totally disregarded, and there being no other testimony of a "clear contract" between the parties, Mantana Hottenstein takes the mortgage as the survivor of an estate by the entireties. The first exception (that is, paragraphs b, c and d) is sustained.

Hottenstein's Estate.

The third exception relates to the refusal of the auditor to allow the widow one-half of the sum of $2400 paid on account of the mortgage. As already stated, the mortgage was dated March 12, 1921, and on March 25, 1921, the mortgagor paid $2400 upon it, both mortgagees signing the receipt. On March 26, 1921, Nathan Hottenstein deposited $2400 in his individual account at the bank. The widow now claims one-half of that sum. Can she recover it?

At common law, she certainly could not. At common law, the husband, during coverture and as between himself and his wife, had the absolute and exclusive right to the control, use, possession, rents, issues and profits of property held as estates by the entireties: French v. Mehan, 56 Pa. 286; Davids v. Harris, 9 Pa. 501; Fairchild v. Chastelleux, 1 Pa. 176. This was not an incident of the estate by entireties, but arose out of the marital relation and applied to all the property of the wife, whether owned in fee simple or otherwise: O'Malley v. O'Malley, 272 Pa. 528. The effect of the several married women's acts has been to change this principle, so that, although the estate by the entireties retains its inherent qualities, the incidents connected with it which arose out of the marital relation are abolished: Diver v. Diver, 56 Pa. 106; Bramberry's Estate, 156 Pa. 628; Meyer's Estate, 232 Pa. 89; McCurdy v. Canning, 64 Pa. 39; Beihl v. Martin, 236 Pa. 519. A consideration of these statutes constrained the Supreme Court recently to hold that, while a divorce does not destroy an estate by entireties, yet the income accruing after the dissolution of the marriage does not belong to one exclusively, but is to be divided equally between the parties: O'Malley v. O'Malley, 272 Pa. 528. This, however, is not our case. The income is not here in question. The thing in controversy is a part of the principal; that is, the proceeds of a part of the mortgage held by the husband and wife as tenants by the entireties. As far as our research has disclosed (and upon this branch of the case we have not been aided by briefs of counsel), this question has never been decided in Pennsylvania, although elsewhere it has been held that when an estate by the entireties is sold by the husband and wife, the proceeds thereof belong to them in equal parts: Fogleman v. Shively, 4 Ind. App. 197, 30 N. E. Repr. 909; In re Albrecht, 136 N. Y. 91, 32 N. E. Repr. 632, 18 L. R. A. 329. These adjudications carry the doctrine of the O'Malley case a step further, for, although that case relates only to the income, the principle upon which it rests is equality of division of that to which both are entitled. True, Meyer's Estate, 232 Pa. 89, contains expressions which seem to antagonize this conclusion, but such expressions have been expressly overruled by the O'Malley case. A careful consideraton of the O'Malley case and the principle upon which it rests, as well as the adjudications in other states, convinces us that the principle of equality of division requires that we hold that when a security held by tenants in common is paid in whole or in part, in the absence of an express agreement, the law implies an agreement that the proceeds thereof be divided between husband and wife in equal portions.

It follows, therefore, that Mantana Hottenstein was entitled at the time of the payment on account of the mortgage to one-half of the proceeds. How, then, stands the case? It is reasonably clear that the money deposited by the decedent in his bank on March 26, 1921, was the identical money which he received from Arndt. Of course, the widow's claim does not rest upon her ability to establish that the $2400 deposited in bank is the identical $2400 received by Nathan Hottenstein; the deposit by him of a like sum received on a previous day is important only to establish the fact that Mantana Hottenstein never received her share of the payment. And this, we repeat, is reasonably clear. Hence, he then had money of which a part belonged to

Mantana Hottenstein. As between husband and wife, possession by the husband raises no presumption of ownership: Kulp v. March, 181 Pa. 627; Turner v. Warren, 160 Pa. 336. Indeed, there is a presumption that whenever a husband receives money belonging to his wife, he receives it as the trustee or agent of the wife: Hamill's Appeal, 88 Pa. 363; Young's Estate, 65 Pa. 101; Mellinger v. Bausman, 45 Pa. 522. It has also been held that when a husband receives money from his wife, the presumption is that it has been received as a loan and not as a gift: Krider v. Hartzell, 40 Pa. Superior Ct. 186. Keeping in mind, then, that the evidence establishes the receipt of the money by the decedent and the presumption arising out of that receipt, and that there is no evidence whatever of any payment by him to her of that amount, or of a gift by her to him, the inevitable conclusion is that she is entitled to recover the sum of $1200. Clearly, in view of the presumptions attaching to the receipt of the money by him, the burden was upon the executor to show payment to Mantana Hottenstein, or a gift by her to her husband, and not having shown this, nor attempted to show it, the presumption must be indulged.

In the disposition of this question the learned auditor seems to have been impressed with the idea that the widow could not take under the will and also assert her claim to the fund. Undoubtedly she had, by her acceptance of the legacy provided in the will, elected to take under the will. However that may be, she is not now attempting to take against the will. It is unquestionably true that if one accepts a benefit under a will, he is estopped from asserting a claim inconsistent with its provisions: Cox v. Rogers, 77 Pa. 160. This doctrine of equitable election rests upon the principle that a person claiming under an instrument shall not assert a claim which prevents the whole of the instrument from being effective: Cooley v. Houston, 229 Pa. 495; Bispham on Equity (9th ed.), 498; 1 Pomeroy on Equity Jurisprudence (2nd ed.), § 395. But this principle applies only when the will specifically refers to the property in question and evinces an intention on testator's part to treat the property as his own (Tompkins v. Merriman, 155 Pa. 441), or where there is a clearly expressed intention to devise the very property in question: Stokes's Estate, 61 Pa. 136. The testator makes no pretence of devising the $1200. Indeed, he could not have had an intention of disposing of the $1200 by his will; his will was made long before he received the fund.

The jurisdiction of the Orphans' Court to determine this controversy is now well established. Whatever doubts may have been raised by Cutler's Estate, 225 Pa. 167, are dissipated by Williams's Estate, 236 Pa. 259, and Walkinshaw's Estate, 275 Pa. 121. The effect of the act of the executor in having the mortgage appraised and of mentioning it amongst the assets of the estate in his account was to bring the security within the control and jurisdiction of this court, and, under all the authorities, we have power to determine whether or not it is an asset of the estate, and if we determine that it is not, to award it to an outside claimant: Miller's Appeal, 84 Pa. 391; High's Estate, 136 Pa. 222; Smith's Estate, 144 Pa. 428; Gaffney's Estate, 146 Pa. 49; Qualters's Estate, 147 Pa. 124; Crosetti's Estate, 211 Pa. 490; Hermann's Estate, 226 Pa. 543. The case of Corson's Estate, 137 Pa. 160, strongly relied upon by the executor, has been distinguished in Moore's Estate, 211 Pa. 338, and, as there explained, contains nothing inconsistent with our determination. It is plain, therefore, that we have jurisdiction to determine the ownership of the mortgage itself. As to the widow's claim to a part of the proceeds of the mortgage, our jurisdiction is equally clear, for in this matter she is asserting

a right as a creditor: Orphans' Court Act of June 7, 1917, § 9, clause *(e)*, P. L. 363.

Exceptions were also filed against the allowance to the executor of attorney fees in the sum of $360. The auditor, without taking any evidence, dismissed the exception. This is error. Attorney fees do not prove themselves, and when they are challenged by exceptions, proof of the character and value of the service must be submitted to the auditor: Jewell's Estate, 11 Phila. 73; Bewley's Estate, 12 Phila. 56, per Hanna, J.; Mutchmore's Estate, 9 Dist. R. 293. And compare McGregor's Estate, 131 Pa. 359; Wistar's Estate, 192 Pa. 289; Moore's Estate, 228 Pa. 516. In Myers's Estate, 253 Pa. 537, it is suggested that attorney's fees may be fixed by the court, or, as was done in that case, the court may appoint an auditor to hear the testimony and fix the fee in the first instance. But it is not suggested that either court or auditor may fix a fee without being advised by testimony of the nature and amount of the service rendered or of the value of such service. Perhaps the fees of counsel for services rendered in the settlement of an estate may be said to have been rendered "under the eye of the court," and thereby enable the court to fix the fees from the knowledge thus derived: Wood's Estate, 272 Pa. 8. But even then the fee is fixed with reference to the facts concerning such services disclosed by the record of the estate: *Cf.* Mitman's Estate, 9 Lehigh Co. L. J. 358. But in the instant case the information available is slight and does not support the allowance claimed. The inventory comprises only six items, the account contains five items of debit and seventeen of credit, three of which are for attorney fees. The auditor held but two meetings. The estate was valued, according to the account, at $5510.76, including the balance of $2500 due upon the mortgage, which was, as already shown, not an asset of the estate. All of this was in cash and no conversion of assets was required. Taking these facts into consideration, we cannot, against objection and without testimony, hold that a fee of $360 is warranted.

In these circumstances, we must adopt as the standard of value the measure provided by the members of the bar in the enactment of the minimum fee bill. We do not mean to imply that the minimum fee bill is always the proper standard; for, conceivably, it may in instances provide an excessive as well as an inadequate fee. After all, the fee is to be based upon the value of the service rather than upon the value of the estate. But, in the absence of testimony of the value of the service, we can consider only the value of the estate. Taking that value at $5510 (which is allowing the $2500 mortgage as an asset), the counsel fees, according to the minimum fee bill, are $200. The fifth exception is sustained, and counsel fees are allowed in the sum stated.

The exception to the auditor's fee can be considered upon another basis. Here we are permitted to fix the fees by an inspection of the report: Fitzsimmons's Appeal, 4 Pa. 248; Porter's Appeals, 30 Pa. 496; Parker's Appeal, 61 Pa. 478; Bracken's Estate, 138 Pa. 104. The auditor's report shows upon its face a large amount of painstaking effort. That his conclusions do not accord with those here expressed does not detract from the value or the extent of his service. If he was obliged to give to the estate the same amount of time which we have bestowed upon it (and it is quite apparent from his report that he gave even more time), he was undoubtedly entitled to a fee of $300. Viewed in this light, while his fee may be high, it is not excessive, and, accordingly, the second exception is overruled.

Now, Aug. 4, 1924, first, third and fourth exceptions are sustained; the fifth exception is sustained and counsel fees of accountant are reduced to

$200 and in that sum are approved; the second exception is overruled and dismissed.

Counsel for either party may, upon notice to the other side, present to the court for confirmation finally a decree of distribution in accordance with these findings and those of the auditor to which no exception was taken.

From Edwin L. Kohler, Allentown, Pa.